THE STATE ex rel. BRADY v. EVANS, Judge, et al.

**In Banc, December 13, 1904.**

1. **ELECTION CONTEST: First Term of Court After Notice: Adjourned Term.** Where it can not be foreseen that an adjourned term of court will be held more than fifteen days after the giving of a notice of an election contest, the suit is properly brought to the next regular term. It would be unreasonable to require the contestant to foresee the action of the court in reference to its adjournments.

2. ———: **Change of Venue: Jurisdiction: Prohibition.** The ruling of the trial court in denying an application for a change of venue on the ground that the judge was biased and prejudiced against the applicant, is a matter of error, and if erroneous it can be corrected on appeal. The jurisdiction of the judge over the case is not ended by the filing of such an application, and hence its denial does not entitle the applicant to a writ of prohibition prohibiting the trial judge from proceeding to hear the case.

3. ———: **Notice: Sufficiency: Prohibition.** Although the notice in a contested election case may state a case defectively, still if it states a case at all, the circuit court has jurisdiction to try the cause, and prohibition will not lie merely to correct an erroneous ruling on a motion in the nature of a demurrer to the notice.

4. ———: ———: **Return: Facts Stated: Prohibition.** An undenied statement of fact in the return of the election commissioners will by the Supreme Court, in passing upon an application for a writ of prohibition, be taken as true.

5. ———: ———: ———: ———: ———: **Secrecy: Number on Ballot.** The contestee in his application for a writ of prohibition in an election contest contends that the order of the court to the election commissioner in reference to opening, counting and comparing the ballots, is in violation of the provision of the Constitution designed to preserve the secrecy of the ballot, in that as the law requires the registration number to be placed on the ballot and the registration lists are public documents, this registration number is an easy and certain means by which each voter may be identified and his ballot exposed. But in his application for prohibition relator

does not say that the registration number was in fact placed on the ballots, whereas on the contrary the election commissioners in their return state that the registration number was not placed on the ballot, and that assertion the relator does not controvert in his reply. *Held*, first, that the undenied statement of fact in the return must be taken as true, and being true there is no danger of identifying the voter by the registration number by comparing and counting the ballot, and hence the writ of prohibition should be denied; second, if in the execution of the order it should develop that the number is on the ballot and that relator's apprehension of exposure is therefore well founded, it is to be presumed that the trial judge will do what is right in the matter.

6. ————: **Contests: Counting and Comparing Ballots.** This court has never held that the ballots can not be opened and recounted and the result certified.

## Prohibition.

WRIT DENIED.

*Frank P. Walsh* and *H. H. Blanton* for relator.

(1) Relator contends that the circuit court had no jurisdiction of the subject-matter of the election contest wherein William Buchholz was contestant and Hugh C. Brady contestee. (a) For the reason that said contest was not made returnable to the first term of the circuit court of Jackson county, Missouri, which convened fifteen days after the official count of the votes and service of contestant's notice on contestee. Secs. 7029, 7033, R. S. 1899; Montgomery v. Dormer, 181 Mo. 5; Adcock v. Lecompt, 66 Mo. 40. (b) The law invests the court with jurisdiction of the subject-matter and jurisdiction of the subject-matter is never and cannot be waived by any sort of an appearance to an action. Davison v. Hough, 165 Mo. 572; State ex rel. v. Spencer, 164 Mo. 54; State ex rel. v. Spencer, 166 Mo. 286; State v. Bulling, 100 Mo. 93; Abernathy v. Moore, 83 Mo. 71. The contestee was compelled by section 7031, Revised Statutes 1899, to give notice in writing twenty days after the service of notice of contest, and the sixteenth day of May was the last day

for serving such notice. (2) The court should have sustained contestee's application for a change of venue for the following reasons: (a) That a contested election case is a civil action within the meaning of section 818, Revised Statutes 1899. (b) The courts and Bar of this State in contested election cases and disbarment proceedings, both of which are not according to the course of the common law, have invariably granted changes of venue in the following cases: Nash v. Craig, 134 Mo. 352; Sone v. Williams, 130 Mo. 540; State ex rel. v. Smith, 176 Mo. 97. (3) The registration list of Kansas City contained the names of the voter, street, names in numerical order of the registration number of each voter. If the registration number is placed on the back of the ballots the registration list can be compared and expose the name of every voter and the manner in which he voted more readily than by comparison with the polling list. As the Legislature has made no provision for safeguarding the secrecy of the ballot in this respect, we hold that no order of recount and examination can be legally made in this cause. Sec. 7296, R. S. 1899; Wines v. Nelson, 159 Mo. 74; State ex rel. v. Spencer, 164 Mo. 23; State ex rel. v. Spencer, 166 Mo. 271. (4) Contestant's notice does not state facts sufficient to sustain an election contest for the following reasons: (a) He alleges that 14,500 ballots cast for contestee did not have the initials of the judges endorsed on the back thereof, when the law of this State in reference to the election of city officials declares it unnecessary. Donnell v. Lee, 101 Mo. App. 191. (b) Contestant alleges that there were 14,500 votes cast for him and counted for contestee, and one hundred in each precinct in the entire city. He does not sufficiently specify or identify these particular ballots in anyway whatever. Contestant alleges that 851 ballots were cast for contestee by persons who did not reside at the places set opposite their names on the registration lists, and identified

the persons by making a copy of all the white voters in said district. A notice of this character being so vague and indefinite and containing such broad allegations is not sufficient on which to base an election contest, unless some evidence other than the mere statement of contestant were introduced. The law presumes the action of the election judges to be legal. Gumm v. Hubbard, 97 Mo. 320; State ex rel. v. Spencer, 166 Mo. 278.

*G. H. Kelly* and *L. H. Waters* for respondents.

(1) The contest was brought to the proper term. (a) The statute requires that the notice shall be given within twenty days after the votes shall have been officially counted, and served fifteen days before the term at which the election shall be contested. R. S. 1899, sec. 7029. The contest shall be determined at the first term of court that shall be held fifteen days after the official count and service of notice of contest. R. S. 1899, sec. 7033. (b) Contestee on May 14th filed his motion to dismiss because the contest was not brought at the first term held fifteen days after the official count, and because it failed to state facts sufficient to constitute an election contest. This motion was properly overruled, as the statute did not require it to be so brought, and the notice contained all necessary averments. R. S. 1899, sec. 7029; Sone v. Williams, 130 Mo. 536. If there were no sufficient notice, or a defective notice, such objections should have been raised at the proper time and in a proper manner. No question as to jurisdiction for want of notice was raised. State ex rel. v. Spencer, 166 Mo. 283; State ex rel. v. Spencer, 164 Mo. 55. (2) Does the notice state facts sufficient to authorize a contest? (a) If the grounds relied on would be sufficient, if sustained, for declaring that contestant was elected, then the notice is sufficient. Paine on Law of Election, sec. 824; Sone v. Williams, 130

Mo. 536. (b) The relator's motion to dismiss said notice was overruled by the court, and we submit that this court will not in this proceeding review the judicial action of the court on that motion. State ex rel. v. Hirzel, 137 Mo. 435; State v. Klein, 116 Mo. 259. (3) The court in proceeding to entertain jurisdiction of the case after overruling contestee's application for a change of venue, did not exceed its lawful authority in and its jurisdiction of said election contest, and it has never been so held. (a) The right to a change of venue is purely statutory and does not exist unless given by statute. State ex rel. v. Wofford, 119 Mo. 408; Cole v. Cole, 89 Mo. App. 233. There is no statute authorizing a change of venue in a contested election, unless an election contest is a civil suit in contemplation of section 818, Revised Statutes 1899. When the statute says there shall be but one form of action, form and not substance is spoken of; and the action is just as much an action of trover or replevin or ejectment or assumpsit, although not so called in the pleading. Bliss on Code Pld., sec. 6. As an election contest was unknown to the common law, it follows that it is not a civil suit or action within the meaning of the civil code. It is not a proceeding according to the course of the common law, and therefore the provisions of the statute concerning appeals and writs of error in civil cases do not apply. Costello v. St. Louis C. C., 28 Mo. 277. Never until the act of 1867 was an appeal or writ of error allowed in an election contest, although the code before then gave to any person aggrieved by any final judgment an appeal in every civil case. R. S. 1855, p. 1287, sec. 9; Laws 1867, p. 114; Boggs v. Brooks, 45 Mo. 233. Recognizing the fact that an election contest was a proceeding not according to the course of the common law and hence not a civil case or suit within the statute concerning appeals, judgments for costs and the taking of depositions, special provisions were enacted authorizing appeals,

writs of errors, judgments for costs and the taking of depositions in an election contest. Appeals and writs of error were first allowed by the act of 1867, Laws 1867, p. 114; R. S. 1899, sec. 7071. Depositions were first authorized to be taken in an election contest as in civil cases by the act of 1840-1. Laws 1840-1, p. 72, sec. 9; R. S. 1899, sec. 7032. A judgment for costs to be enforced as in civil cases was first authorized by the same act. Laws 1840-1, p. 72, sec. 11; R. S. 1899, sec. 7034; Steele v. Wear, 54 Mo. 534. These statutes all proceed on the theory that an election contest is not a civil suit. They were enacted, and the decisions in Costello v. St. Louis Circuit Court, 28 Mo. 277; Boggs v. Brooks, 45 Mo. 233, and Steele v. Wear, 54 Mo. 534, were rendered prior to the adoption of our present Constitution. The law regulating the manner of conducting a contested election case is a code unto itself and is embraced in article 1, chapter 102, Revised Statutes 1899. The code of civil procedure has no application to contested election cases. State ex rel. v. Spencer, 166 Mo. 279; 52 Tex. 335. If, therefore, an election contest is not a civil suit and the code of civil procedure has no application, then section 818, Revised Statutes 1899, of the code authorizing a change of venue in civil cases does not authorize a change of venue. If the omission of a clause giving the right to a change of venue was accidental or unintentional, the courts cannot furnish the remedy. Ex parte Donaldson, 44 Mo. 149; State ex rel. v. Clark, 57 Mo. 25. (b) If the court erred in denying a change of venue or in refusing to sustain contestee's motion to dismiss, he has his remedy by appeal or writ of error. This writ does not lie to correct error in judicial action. State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Scarritt, 128 Mo. 331; State ex rel. v. Klein, 116 Mo. 259; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. v. Burckhart, 87 Mo. 533. (4) The order upon the board of election commissioners in this case to

examine and recount the ballots was a proper order under the Constitution and laws of this State, and has been approved by this court. State v. Klein, 116 Mo. 259; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Spencer, 164 Mo. 37. Relator contends that section 6995, Revised Statutes 1899, applies to elections held in Kansas City, and that that section requires that the voter's registration number should be written on his ballot, and that, as the registration lists may be obtained by any one, the secrecy of the ballot is thereby destroyed. Section 6995 was first enacted in 1877. Laws 1877, p. 246, sec. 1. While this law was in force this court held that a contestant was entitled to inspect the registration lists. State ex rel. v. Hoblitzell, 85 Mo. 620; State ex rel. v. Slover, 126 Mo. 652. Since the act of 1895, the registration number of the voter on his ballot has not been required by any statute applicable to Kansas City, nor has it been indorsed thereon. Donnell v. Lee, 101 Mo. App. 211.

VALLIANT, J.—This is an application by the relator for a writ of prohibition to be directed to one of the judges of the circuit court of Jackson county to prohibit him from proceeding to hear and determine a contested election case pending before him and to prohibit other respondents, who compose the board of election commissioners of Kansas City, from executing an order made by the circuit court in the case.

The petition states that the relator was duly elected to the office of police judge of Kansas City at a general municipal election held in that city on April 5, 1904; that William Buchholz, who is also made a party, was the opposing candidate and has instituted in the circuit court of Jackson county at Independence, over which Judge Evans presides, a suit to contest relator's election; that the circuit court has made an order requiring the election commissioners to open and count the ballots, etc., which they are about to do.

The petition also alleges that the circuit court is without jurisdiction, or is acting in excess of its jurisdiction, in the case, and it is on that ground that this writ is sought. The grounds on which the relator contends that the court is without jurisdiction, or going beyond its authority, are reducible to four, viz: 1, that the suit was not brought to the first term of the court held fifteen days after the official counting of the votes and service of notice; 2, that the court overruled contestee's lawful application for a change of venue; 3, the notice of contestant did not state facts sufficient to constitute the basis for a contested election suit; 4, the order to open and count the ballots is so framed that it violates the provisions of our Constitution designed to preserve the secrecy of the ballot.

The facts on which these contentions respectively rest will be stated under the point to which they apply.

I. The first ground assigned to sustain the writ is that the suit was not brought to the first term of the court held fifteen days after the official count of the ballots and service of notice.

Section 7033, Revised Statutes 1899, declares: "The contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice of contest, unless," etc.

The circuit court met at Independence, March 14, 1904, which was the first day of the March term; it remained in continuous session, adjourning from day to day, until and on April 6th; the election was held April 5th; on April 6th the court adjourned to April 16th; on that day it adjourned to May 7th; on April 26th the notice of contest of election was served on relator; on May 7th court adjourned to May 14th, on that day it adjourned to June 4th, and on that day it adjourned until court in course; all the above sessions being of the March term. On June 6th the regular June term began. The notice of contest that was served on re-

lator April 26th, was to the effect that his election would be contested at the June term, which was the first regular term of the court held fifteen days after the official count of the ballots and service of notice.

The relator contends that the notice should have been to one of the adjourned terms, which were May 7th, May 14th, and June 4th.

The statute (sec. 7029, R. S. 1899), requires the notice to be given to the contestee within twenty days after the official count of the ballots. In this case the official count was on April 11th. The notice was given April 26th, within the time allowed by law. On that date the court stood adjourned to May 7th, which was less than fifteen days from the date of service of the notice, and therefore contestant could not have made his notice returnable to that adjourned term. On April 26th, he could not have known that the court would on May 7th adjourn to another day in the March term, or that there would be another adjourned term held. The only term he could be charged with knowledge of was the regular June term and he gave his notice for that term. It would be unreasonable to require him to foresee the action of the court in respect of its adjournments and unjust to cut him off in his case because he could not know what the future would bring forth.

In Adcock v. Lecompt, 66 Mo. 40, and Montgomery v. Dormer, 181 Mo. 5, it was held that the term of court to which the notice in a contested election case should be given was the first term held fifteen days after the official count of the ballots, whether a regular, a special or an adjourned term. But when the language used in those cases is applied to the facts then before the court, it will be seen that it had no reference to the facts now before us. In the first of those cases the notice had been given to contestee to appear at a term of the county court to be held on the first Monday in January

thereafter, whereas there was no term to be held in January. It was held that the notice was not sufficient. In the second case, the October term of the circuit court had adjourned from November 6th to December 15th and it was so entered on the record of that court. The notice in that case was given for that adjourned term, which was the first term held fifteen days after the election. It was held that that notice was sufficient but no such unreasonable and unjust construction has ever been put on this statute as to require a party to give notice to his adversary to appear and answer the contest at an adjourned term not then called, and of which he could not have known. In such case the only term the contestant could name was the term fixed by law, and that is what this contestant did.

II. On May 7th the contestee, the relator here, appeared in the circuit court and filed his application for a change of venue, based on the ground that the judge was so biased and prejudiced against him that he could not have a fair and impartial trial. This application was by the court taken under advisement until May 14th, and then overruled for the reason that the judge was of the opinion that the statute relating to change of venue did not apply to a contested election case. Relator now contends that by his application for a change of venue the jurisdiction of the court was ended.

Under this head the counsel have discussed two questions: First, is the statute relating to a change of venue, in civil cases, applicable to a contested election case? Second, if that statute is applicable, and if, under it, an application for a change of venue is made, is the jurisdiction of the court thereby ended?

If the second question is to be answered in the negative, it will be out of place for us to discuss the first question at all, because in this application for a writ of prohibition we consider not matters of error,

but of jurisdiction only. When an application for a change of venue is made it is addressed to the court, and is in the first instance to be decided by the court, and like any other question that arises it may be decided right or it may be decided wrong, and, however it is decided, either side aggrieved may have the decision of the court on that point reviewed on appeal. If the application is denied when it should have been granted, it is error for which the judgment, if finally against the applicant, will be reversed, but if the final judgment should be in his favor could it be said that it was a judgment which the court had no jurisdiction to render? The room for the exercise of discretion in the trial judge on an application for a change of venue is sometimes very narrow. If the application is in due form and in due time, his duty to grant the change in a certain class of cases, is imperative, but still it is for him, at least, to say that the application is or is not in due form or in due time, and although he may err in his judgment yet his jurisdiction is not thereby ended. And sometimes the application is complicated with other questions. Take this case for illustration: does the statute in relation to change of venue in or-. dinary civil suits apply to a contested election case? That that is a debatable question is shown in the briefs before us in which learned counsel on each side have debated it both on principle and on authority; the learned circuit judge himself took time to consider it and postponed his decision to a later day. If the application for a change of venue was a jurisdictional fact, the very filing of it ended the jurisdiction of the court, regardless of the opinion the judge may have had of the law questions involved, and all the duty that remained to him was to designate another court or judge to try the case. This court has never given the statute that construction.

We are referred to State ex rel. Scott v. Smith,

176 Mo. 90, as holding that the application for a change of venue ends the jurisdiction of the court, but that case does not so hold. In that case the party had applied to the trial court for a change of venue which was denied and the final judgment being against him, he appealed to the Kansas City Court of Appeals where it was held that the change of venue should have been granted, but the Court of Appeals then said that since, in that class of cases, it had original jurisdiction, it would take the record that had been brought up on appeal which contained the evidence heard in the circuit court, and try the cause as if it had originated in that court; and did so, making a finding of the facts and pronounced final judgment. When the cause came here on certiorari we held that the Court of Appeals was right in saying that the change of venue should have been granted, but that it was wrong in holding that it could treat the case that was before it on appeal as if it were a cause begun under its original jurisdiction. The opinion of the Court of Appeals, containing some words that might give the impression that the application for a change of venue deprived the court of its jurisdiction, is quoted in our opinion by Fox, J., in that case, wherein it is said that the law on that point was correctly decided by that court. But that court in the quotation given did not decide that it was a jurisdictional matter and we did not so decide; the point decided by the Court of Appeals was that the law in regard to a change of venue in a civil case applied to the case then in hand, which was a proceeding to disbar an attorney at law. The language of the Court of Appeals quoted was: "But suppose the disqualification of the judge did deprive him of jurisdiction, and notwithstanding he erroneously proceeded with the trial," etc. Those words can not be construed into a deliberate decision that the judge was thereby deprived of his jurisdiction.

We give no opinion now on the question of whether the statute in reference to change of venue in civil suits applies to contested election cases, but we do hold that even if the statute does apply, and if the circuit judge ought to have granted the change of venue, still his refusal to do so was a mere error for the remedy of which the party may have his appeal, but he is not for that reason entitled to a writ of prohibition.

III.    The contention that the notice does not state facts sufficient to sustain an election contest is based on the same grounds that demurrer to the notice, treating it as a pleading, would present.  For example, the notice alleges that 14,500 ballots cast for contestee did not have the initials of the judges indorsed on them, as to which the relator says it was not necessary that such initials should be so indorsed; that there were 14,500 votes cast for contestant, but counted for contestee, and 100 such in each precinct, but that the particular ballots are not specified; that 851 persons voted for contestee who did not reside at the places set opposite their names on the registration lists, but that the specifications as to those persons are vague and indefinite, etc.  Although the notice may state a case defectively, as to which in this instance we express no opinion, still, if it states a case at all, as to which we hold that the notice in this case does, the court has jurisdiction, and prohibition will not lie merely to correct an erroneous ruling on a motion in the nature of a demurrer to the notice. .

IV.    The proposition that the order of the court in reference to opening, counting and comparing the ballots, is in violation of the provision of the Constitution designed to preserve the secrecy of the ballot, is based on the statement that the law applicable to Kansas City requires the registration number of the voter to be placed on the back of the ballot, and since the registra-

tion lists are public documents, this number is an easy and a certain means by which each voter may be identified and his ballot exposed, in violation of the law as laid down by this court in State ex rel. Funkhouser v. Spencer, 164 Mo. 23, and State ex rel. Funkhouser v. Spencer, 166 Mo. 271.

The order of the court is as follows:.

"Now, therefore, these presents are to command you and each of you members of the said board of election commissioners, to proceed to open, examine and recount all the ballots that were cast at said election, held in the city of Kansas City, in said county and State, on the first Tuesday after the first Monday in April, 1904, the same being the fifth day of April, 1904, for the office of police judge of said city, for the term aforesaid, and that you certify to this court under your hand and seal as required by law, the result of such examination and recount of the said ballots so far as the same relate to the office aforesaid in contest in the election contest above mentioned; and that you distinguish between the ballots which were counted and those which were rejected by the judges of election acting in the several precincts of said city of Kansas City at the election aforesaid and that you certify to this court any and all objections made to any of the ballots cast at said election for said office by the parties to this contest."

It will be noticed that this order contains no such features as were condemned by this court in the cases above cited, and there is nothing on its face to create the apprehension that relator now feels that the voters will suffer exposure of their ballots. We have never held that the ballots could not be opened and recounted and the result certified.

It is a question of law on which the counsel in this case are not agreed as to whether or not the election

law, applicable to Kansas City, requires the registration number of the voter to be placed on the ballot.

It is immaterial, so far as the point now under discussion is concerned, whether the law did or did not so require; the material question is, was this number in fact placed on these ballots that are now to be counted? If this number was in fact not placed on the ballots, although the law may have required it, there is no danger of identifying the voter by a number on the ballot, and if the number is there, although the law did not require it, that means of identification is furnished.

In his petition for the writ of prohibition the relator states that the law requires the number to be placed on the ballot, but he does not say that it was in fact placed there. In their return to the rule to show cause, the election commissioners state that the law does not require it, and they also state that in point of fact the registration number was not placed on the ballot; in his reply to the return, although the relator reasserts that the law requires it, he does not deny the statement of the fact that the number is not there. We must, therefore, take the undenied statement of fact in the return to be true, and conclude that the relator's apprehension of danger of exposure from the supposed number on the ballot is unfounded.

The presumption must be indulged that Judge Evans took the same view of the law on this point that the election commissioners took, or else that he was informed as to the fact that the registration number was not on the ballots and therefore he made his order without safeguarding the secrecy of the ballot from that source. If in the execution of the order the fact should develop that the number is on the ballot and the relator's apprehension of danger is therefore well founded, he can bring the matter to the attention of the judge who, the law presumes, will do what is right in

the premises. But in order to grant a writ of prohibition now we would first have to assume as a fact what the record not only does not show to be a fact, but shows rather to the contrary, and, second, that the circuit judge would not do his duty when the fact was properly brought to his attention.

The writ of prohibition is denied.

All concur, except *Burgess, J.,* absent.