[Civ. No. 1539.   Second Appellate District.—December 7, 1915.]

## A. NOLTE, Appellant, v. BARBARA NOLTE, Respondent.

DIVORCE—RECORD ON APPEAL—AFFIDAVIT NOT PART OF JUDGMENT-ROLL. On an appeal from an order setting aside a final decree of divorce, an affidavit in the transcript which appellant claims contains a statement of facts which led the lower court to make an order for *nunc pro tunc* entry of the interlocutory decree, which affidavit comes into the transcript under a certificate describing it as part of the judgment-roll, but which is not a part of the judgment-roll and does not appear to have been one of the papers used in connection with the order from which the appeal is taken, cannot be legally taken cognizance of.

ID.—SUFFICIENCY OF FACTS TO AUTHORIZE ORDER—PRESUMPTION.—Such defect is immaterial, since facts sufficient to satisfy the court may have existed and may have been shown to the court; and, since no appeal appears to have been taken from the judgment, it will be presumed that the court had before it facts sufficient to authorize

such order to the full extent that the order may legally be made under any circumstances.

ID.—JUDGMENT—ENTRY NUNC PRO TUNC.—While the power of a court over its records, in order to make them speak the truth, is fully recognized, and for that purpose errors or omissions in the entry of judgments may in some instances be corrected by entering them as of the date when rendered, the full effect of a *nunc pro tunc* order is limited so as to prevent results not contemplated by the law.

ID.—ENTRY OF INTERLOCUTORY DECREE NUNC PRO TUNC—VOID ENTRY OF FINAL DECREE.—Section 131 of the Civil Code contemplates that a final decree of divorce shall not be entered until after the expiration of the time within which an appeal may be taken from the interlocutory decree, nor during the pendency of such appeal if taken, and the entry of the interlocutory decree *nunc pro tunc* as of an earlier date does not affect the time prescribed within which an appeal may be taken; and the entry of a final decree within a week after the *actual* entry of the interlocutory decree *nunc pro tunc* as of a date one year previous is void, and may be vacated on motion of either party or of the court.

APPEAL from an order of the Superior Court of Los Angeles County vacating a final decree of divorce. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

H. H. Appel, and E. J. Dennison, for Appellant.

Charles W. Hoag, for Respondent.

CONREY, P. J.—Appeal by the plaintiff from an order vacating a final decree of divorce. On the twenty-eighth day of June, 1909, the case was tried and submitted to the court for decision. On June 28, 1910, an interlocutory decree was signed, together with an order "that the foregoing decree be entered *nunc pro tunc* as of June 28, 1909." This decree was entered July 5, 1910, as of June 28, 1909. On July 1, 1910, a final decree of divorce, purporting to be based upon such interlocutory decree entered *nunc pro tunc* as aforesaid, was signed by the judge. This decree was entered July 6, 1910. On the twelfth day of November, 1912, the court, upon its own motion, entered an order setting aside and vacating said final decree "because it was entered within a week after the actual entry of interlocutory decree of divorce." It is from this last mentioned order that the appeal is taken.

We find in the transcript an affidavit made by the plaintiff's attorney and sworn to on July 1, 1910, which the appellant claims contains a statement of the facts which led the court to make its order for *nunc pro tunc* entry of the interlocutory decree. This affidavit comes into the transcript under a certificate describing it as part of the judgment-roll. As it is not part of the judgment-roll and does not appear to have been one of the papers used in connection with the order from which the appeal is taken, we find no legal ground for taking cognizance of the contents of such affidavit. (Code Civ. Proc., sec. 951.) But this defect is immaterial, since facts sufficient to satisfy the court may have existed and may have been shown to the court; and since no appeal appears to have been taken from the judgment, it will be assumed that the court had before it facts sufficient to authorize such order to the full extent that the order could legally be made under any circumstances. Therefore, if, as counsel claims, an interlocutory decree in like form as the one that was entered in 1910 had been signed on June 28, 1909, by the judge who tried the case, and had been delivered to the clerk for filing, and if without filing or entry of such decree the same was lost by the clerk, these would be circumstances strongly appealing to the court in the exercise of its judgment favorably to the request of the plaintiff that the decree be entered as of the date of trial.

It is well established that where a judgment has been rendered and its entry omitted, it may be subsequently entered, and, if justice requires, may be made to take effect *nunc pro tunc* as of the date when it was actually made. (*In re Skerrett*, 80 Cal. 62, [22 Pac. 85]; *Fox v. Hale & Norcross S. M. Co.*, 108 Cal. 480, [41 Pac. 328]; *Marshall* v. *Taylor*, 97 Cal. 426, [32 Pac. 515], and many other cases.)

The order setting aside the final decree is not necessarily based upon lack of authority of the court to enter its interlocutory decree *nunc pro tunc* as of the date when it was rendered, but is based upon the ground that the court has no power to enter a final decree until the expiration of one year after the *actual* entry of the interlocutory decree. "When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, . . . but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall

not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed. . . ." (Civ. Code, sec. 132.) During the period of time covered by the proceedings under review herein it was provided in section 131 of the Civil Code that from an interlocutory judgment in a divorce action "an appeal may be taken within six months after its entry, in the same manner and with like effect as if the judgment were final." In *Spence* v. *Troutt,* 133 Cal. 605, [65 Pac. 1083], it was held that the time allowed for an appeal commences to run from the time of the actual entry of the judgment. The court said: "It hardly requires argument or authority to establish the proposition that a court cannot by antedating an order, or the entry of it, cut off the right of a party to move for a new trial, to move to set the judgment aside, or to appeal. These rights, given by the Code of Civil Procedure, cannot be lost to a party by such action, whether the effect was designed or not. The test as to the period in which the party must act in order to get relief from an order or judgment against him must be, whether he could have obtained the desired relief (on a proper showing) before the *nunc pro tunc* order was made." In *Baum* v. *Roper,* 1 Cal. App. 435, [82 Pac. 390], it was said that, while it is true that an appeal will not lie from a judgment until it has been entered, the judgment in other respects gets its force and vitality from its rendition and not from its entry; that the rendition of the judgment is the judicial act of the court and its entry is the ministerial act of the clerk. So it was held in *Los Angeles County Bank* v. *Raynor,* 61 Cal. 145, that it was not necessary that the judgment should have been entered when the execution was issued. "The enforcement of a judgment does not depend upon its entry or docketing. These are merely ministerial acts, the first of which is required to be done for putting in motion the right of appeal from the judgment itself, and of limiting the time within which the right may be exercised (Code Civ. Proc., sec. 681), or in which the judgment may be enforced (Code Civ. Proc., sec. 685); and the other for the purpose of creating a lien by the judgment upon the real property of the debtor. (Code Civ. Proc., sec. 671.)"

The effect of these decisions is that, while the power of a court over its records, in order to make them speak the truth, is fully recognized, and for that purpose errors or omissions in

the entry of judgments may in some instances be corrected by entering them as of the date when rendered, the full effect of the *nunc pro tunc* order is limited so as to prevent results not contemplated by the law. There seems to be no reason why such limitation should not apply to the established time when the right to a final judgment of divorce will accrue, in the same manner that it applies to the time when an appeal may be taken, or to any other of the instances above noted. We do not doubt that these were the considerations which led the supreme court to hold, in *Grannis* v. *Superior Court,* 146 Cal. 245, [106 Am. St. Rep. 23, 79 Pac. 891], that the provisions of sections 131 and 132 of the Civil Code, "interpreted in the light of previous legislation and decisions and the purpose to be accomplished by the law, are clearly to be understood as a limitation on the power of the court in the matter, and as intended to forbid the entry of a final judgment until after the prescribed period. The law can only be made effectual for the accomplishment of its object by holding that any final judgment purporting to grant the divorce is absolutely void if thus prematurely entered." While in that case the court was not considering the power to make a *nunc pro tunc* entry of a decree, or the limitations on the effect of such entry, we are satisfied that the interpretation there placed upon the code provisions necessarily leads to the conclusion that a final decree of divorce could not be entered until one year after the actual entry of the interlocutory decree. The language of section 131 contemplates that a final decree shall not be entered until after expiration of the time in which an appeal may be taken from the interlocutory decree, nor during the pendency of such appeal if taken. As we have seen, the entry of the interlocutory decree *nunc pro tunc* as of an earlier date does not affect the time prescribed within which an appeal may be taken. The result is that in this case, as in the Grannis case, "the judgment in question, being wholly void as a final judgment granting an immediate divorce, it was within the power of the superior court at any time, on motion of either party, or of its own motion, to declare it null, in so far as it purported to be of such effect."

That we have correctly understood the intended effect of the supreme court's decision in the Grannis case further appears from the fact that on the same date, in *Claudius* v. *Melvin,* 146 Cal. 257, [79 Pac. 897], the same court said:

"We think the defendant is correct in the position that the year which must elapse before final judgment can be given begins to run from the time of the actual entry of the interlocutory judgment, and not from any theoretical *nunc pro tunc* date of entry."

The order is affirmed.

James, J., and Shaw, J., concurred.